SUPREME JUDICIAL COURT

STATE OF MAINE                                              BAR 24-20

BOARD OF OVERSEERS OF THE BAR,     )
                       Plaintiff    )
                                    )
           v.                              )   STIPULATED FINDINGS,
                                    )   CONCLUSIONS
ROGER M. CHAMPAGNE, ESQ.           )   and SANCTIONS ORDER
of Biddeford, ME,                  )
Me. Bar No. 009273,                )
                     Defendant    )

      This matter came before the Court for hearing on January 13, 2025. The Plaintiff, the Board of Overseers of the Bar (Board), was represented by Bar Counsel Julia Sheridan, Esq. The Defendant, Attorney Roger M. Champagne, appeared and was represented by Stephen J. Schwartz, Esq., and Haley K. Hunter, Esq. The parties stipulated that Attorney Champagne violated Maine Rules of Professional Conduct 1.1, 1.5(a), 1.6(a), 1.8(j), 5.3(a)(b)(c), 5.5(a), and 8.4(a)(b)(c)(d)(g). On the record, the parties agreed that the recitations in the Stipulated Findings, Conclusions and Sanctions Order should be accepted by the Court as stipulations of the parties.

      Defendant Roger M. Champagne, Esq. of Biddeford, ME, has been at all times relevant hereto an attorney duly admitted to and engaging in the practice of law in the State of Maine. As such, Attorney Champagne is subject to the disciplinary authority of this Court pursuant to Maine Bar Rule 10(a). Attorney Champagne is also subject to the Maine Bar Rules, and the Maine Rules of Professional Conduct. Attorney Champagne was admitted to the Maine Bar in

2002 and he currently practices in Biddeford, Maine. Attorney Champagne acknowledges that sufficient evidence exists to support the findings and conclusions set forth herein. He further acknowledges that the material facts of the misconduct, as alleged, are true or could be proven, if believed by a factfinder, such that the facts and circumstances amount to misconduct and warrant suspension.[1] Having reviewed the pleadings and the parties' stipulations the Court finds as follows:

<u>Unauthorized Practice of Law</u>

Defendant was administratively suspended on April 18, 2023, for failure to comply with Continuing Legal Education (CLE) requirements. Despite notice of the suspension, Defendant continued to represent clients, including appearing in court and at one or more dispositional conferences on April 27, 2023, meeting with a client on April 24, 2023, and appearing in court on May 1, 2023.

On April 21, 2023, at 10:21 a.m., Defendant called the Board of Overseers and left a voicemail message stating that he had been told by a Superior Court Justice on April 20th that he was suspended but that he was able to complete his court appearance that day. Later in the day on April 21, 2023, Defendant emailed the Board's then-CLE Director, David Morse, Esq., and stated, "I was told by Justice [] today that I was suspended. While I can use a break – I have 300 Court Appointed cases. I am wondering why. I completed the MCILS 12.5 hour CLE a

---

1. The statement "if believed by a factfinder" was not stipulated to by the parties but was requested by Defendant to be added to the findings and conclusions and so ordered by the Court. This is true throughout the entirety of this Order where the words "if believed by a factfinder" are used.

couple of weeks ago. I was under the impression that covered any deficiency. When you can, please contact me. I suspect you are busy, but I have 6 cases on Monday and 8 others on Tuesday."

David Morse responded on April 21st at 12:24 p.m. and informed Defendant that he needed one credit for the Harassment and Discrimination (H&D) CLE requirement, had not filed his 2022 MCLE Annual Report Statement and had to pay the $75 late fee. Attorney Morse also provided information on upcoming courses that would satisfy the CLE requirement, and instructions on how to submit his MCLE Annual Report Statement and pay the late fee. On April 24, 2023, at 12:00 p.m., Defendant emailed Attorney Morse, stating that he had signed up for an Ethics CLE that day, that he had paid the reinstatement fee and late fee and wanted to know if the Ethics CLE qualified to fulfill his remaining CLE requirements.

On April 24th, at 12:03 p.m., Attorney Morse responded that the Ethics CLE did not meet the H&D credit requirement. Attorney Morse sent Defendant a link to a CLE that would satisfy the requirement. On April 24th, at 12:27 p.m., Defendant emailed Attorney Morse inquiring whether a specific April 27th CLE, scheduled for 1:00 p.m., would qualify. Attorney Morse responded at 1:30 p.m. that the course name appeared to describe an H&D course occurring on April 27th and that Defendant would need to contact the course provider in order to register.

Defendant emailed on April 25, 2023, at 9:00 a.m., inquiring, again, about H&D courses and whether the course he had taken on April 24th qualified. He asked, again, whether the April 27th class qualified. On April 25th, at 9:13 a.m., Attorney Morse responded, stating that the Defendant should register for the April 27th class and that he could call the MSBA, the event sponsor, to clarify whether he had signed up for an H&D credit course.

On April 27, 2023, Defendant appeared in Probate Court and represented a client at a hearing. The court's records demonstrate that the hearing ended at 11:39:56 a.m. on April 27th. The April 27th H&D CLE about which Defendant had inquired did not begin on April 27th until 1:00 p.m., after Defendant had completed the hearing in Probate Court. As such, Defendant knowingly practiced law while under suspension at least on April 27th.

On May 1, 2023, at 8:47 a.m., Defendant emailed Attorney Morse, stating that Defendant's assistant had left, that he never received the April 25th email, that someone had called MCILS to report that Defendant was suspended and inquiring whether there was anything he could take soon to satisfy his CLE requirements. On May 1st, at 9:05 a.m., Attorney Morse responded by sending links to H&D credit courses that were happening that day and on May 3rd. Attorney Morse also instructed Defendant that he needed to complete and submit a signed affidavit that complied with M. Bar R. 4(k) and directed Defendant to samples located on the Board's website.

On May 3, 2023, Defendant emailed Attorney Morse inquiring whether Attorney Morse had received confirmation of Defendant's CLE and asking about his status. Defendant was reinstated on May 3, 2023.

MCILS reported 60 entries for Defendant in its database across 32 docket numbers between April 18, 2023, and May 3, 2023. These instances constitute the unauthorized practice of law.

Defendant attributes his failure to see emails that would have alerted him earlier to the CLE suspension to his then administrative staff person. However, it is indisputable that Defendant practiced law while under suspension and he does not contest that conclusion.

### Competency and Failure to Supervise

MCILS also received information that Defendant allowed his nonlawyer staff to perform out-of-court services provided by his office, including reviewing and summarizing discovery, drafting and filing motions, and signing and filing pleadings. MCILS also received information that Defendant failed to review or sufficiently review discovery, failed to meet with clients until their dispositional conference dates, and failed to meet with incarcerated clients.

MCILS received additional information that Defendant made his nonlawyer staff responsible for billing MCILS, that the nonlawyer staff person was responsible for entering time into the defenderData system used by MCILS and included time for work done by the nonlawyer staff person. defenderData was the MCILS case management and billing system and was used by assigned counsel to enter timekeeping data and submit billing vouchers to MCILS.

Defendant asserts that he conducted work on client files off-hours when his administrative staff person was not present. Defendant admits, however, that he failed to adequately supervise his administrative staff person with regard to emails and other tasks and failed to act competently. Attorney Champagne acknowledges that the material facts of the misconduct, as alleged, are true or could be proven, if believed by a factfinder.

<u>Harassment and Discrimination, and Conflict of Interest</u>

On May 5, 2023, MCILS received an accusation that Defendant had sexually assaulted a client in 2020 and that the client had filed a police report in 2023. According to the client, in November of 2020 Defendant approached her and went to hug her goodbye, pulled her in with one hand and put one hand up her shirt, touching her sexually. Defendant asked her for a kiss, she said no and pushed him away.

Afterward, the client communicated with Defendant telling him she wanted to drop the case in which he was representing her. Defendant texted her, asking her why and telling her she was in charge. The client texted him she would continue the case "but please don't ever misinterpret my kindness again. Sunday was very uncomfortable for me, and I was very caught off guard." Attorney Champagne acknowledges that the material facts of the misconduct, as alleged, are true or could be proven, if believed by a factfinder.

<u>Fees</u>

The client provided copies of checks written by Defendant to the client in July of 2020, from his office account. When the matter in which Defendant

represented the client settled in July of 2021, the client received $20,000. The client had not signed an engagement or fee agreement and did not pay Defendant, at all. When the case settled, Defendant asked for $1,000. The client paid Defendant $3,000 because she felt that Defendant was trying to "shut her up" so that she would not reveal his behavior. Attorney Champagne acknowledges that the material facts of the misconduct, as alleged, are true or could be proven, if believed by a factfinder.

## Confidentiality

Defendant allowed a client to review other client files without consent of the affected clients. Attorney Champagne acknowledges that the material facts of the misconduct, as alleged, are true or could be proven, if believed by a factfinder.

## Rules Violated

The Court finds that the stipulations support, and Defendant admits, that Defendant violated Maine Rules of Professional Conduct 1.1 (Competency), 1.5(a) (Fees), 1.6(a) (Confidentiality), 1.8(j) (Conflict-of-Interest: Current Clients: Specific Rules), 5.3(a)(b)(c) (Responsibilities Regarding Nonlawyer Assistants), 5.5(a) (Unauthorized Practice of Law), and 8.4(a)(b)(c)(d)(g) (Misconduct).

## CONCLUSION AND SANCTION

The purpose of bar disciplinary proceedings is not punishment, but rather the protection of the public from attorneys who, by their conduct, have demonstrated that they are unable to properly discharge their professional duties. *See* M. Bar R. 2(a). Pursuant to Maine Bar Rule 21(c) the factors to be considered in imposing sanctions for attorney misconduct are: the duty violated,

the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct and the existence of any aggravating or mitigating circumstances. *See Bd. of Overseers of the Bar v. Brown*, 2023 ME 58, at ¶ 29; ABA Standards for Imposing Lawyer Sanctions, 1991 (ABA Standards).

The first factor to be considered is the determination of the duty that has been breached by the attorney's misconduct. The Maine Rules of Professional Conduct and the Maine Bar Rules require attorneys to uphold their responsibilities to clients, the public, the legal system and the profession. In this instance, Attorney Champagne's actions violated duties owed to clients, to the public, to the legal system and to the profession. Pursuant to the second Rule 21(c) factor, Attorney Champagne's conduct was intentional or knowing. Pursuant to the third factor, Attorney Champagne's conduct caused injury or potential injury.

Standard 4.22 of the ABA Standards for Imposing Lawyer Sanctions (Standards) provides as follows:

> Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

Standard 4.32 states that:

> Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible

effect of that conflict, and causes injury or potential injury to a client.

Standard 6.22 provides that:

Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

Standard 7.2 states that:

Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

The fourth factor under Bar Rule 21(c), is aggravating, see Standard 9.2, and mitigating, see Standard 9.3, circumstances. Attorney Champagne committed multiple offenses, see Standard 9.22(d), committed misconduct involving a vulnerable client, see Standard 9.22(h), and has substantial experience in the practice of law, see Standard 9.22(i). In mitigation, see Standard 9.3, there exists no prior disciplinary record, see Standard 9.32(a), and Attorney Champagne is remorseful, see Standard 9.32(l). Additionally, Attorney Champagne has committed his practice to helping thousands of indigent defendants over the course of his career, see Standard 9.32(g) dealing with character and reputation.

Considering all the factors, as well as circumstances in aggravation and mitigation, including Attorney Champagne's character and reputation, acceptance of responsibility, and lack of disciplinary history, the Court hereby orders that Attorney Champagne is suspended for one year, all suspended, and shall be under a one-year period of probation with monitoring (monitor to be approved by Bar Counsel). Special conditions of probation and monitoring include: 1) three extra CLE hours devoted to avoiding Harassment and Discrimination (H&D), with these programs to be approved in advance by Bar Counsel and completed within the first eight months of probation; 2) no texting with clients and no nighttime or weekend client meetings; 3) a staff assistant shall be present at all in office meetings with female clients and meetings with female clients outside Attorney Champagne's office shall only occur in a courthouse during normal business hours; and 4) payment of costs of investigation and prosecution. Finally, in the event the Lawyers' Fund for Client Protection (LFCP) pays any new claims on behalf of any of Attorney Champagne's former clients relating to this matter after the effective date of this order, as a condition of probation Attorney Champagne shall be responsible for reimbursement of those claims in a manner acceptable to the Board and to the LFCP Trustees.

The Clerk shall enter this order on the docket pursuant to Maine Rule of Civil Procedure 79.

Dated: January 13, 2025

_James F. Martemucci_
**Justice James F. Martemucci**
Sitting as Single Justice by Designation